UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

VINCENT DOW,

                   Petitioner,

      -v-

JAMES J. WALSH, Superintendent,
Sullivan Correctional Facility,

                   Respondent.
----------------------------------------------------------x

**OPINION AND ORDER**
03-CV-424 (LB)

BLOOM, United States Magistrate Judge:

     Petitioner Vincent Dow seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to decision of this petition by a Magistrate Judge pursuant to 28 U.S.C. § 636 (c). For the reasons set forth below, the petition is denied.

## FACTS

### I. Background

     On December 27, 1998, petitioner and Orlando Rodriguez ("Rodriguez") robbed three men at gunpoint. At trial, victims' Damuu McCoy ("McCoy"), David Grimes ("Grimes"), and Evin Douglas ("Douglas") testified that they left McCoy's home by car between one a.m. and two a.m. to go to the Higher and Higher club in Brooklyn. (T at 18, 120-21, 182).[1] The men parked the car across the street from the club, next to a warehouse. There were other clubs on the block including Club 88 and Cousin's Place. (T at 23, 121). As McCoy, Grimes and Douglas exited the car, they noticed three men standing in front of Club 88. One of the men got into his car and drove away. The two remaining men crossed the street and walked towards McCoy, Grimes and Douglas. One man

---

[1] "T"__ refers to the pages of the trial transcript.

1

approached the car from the front and one man approached the car from behind. The man in front, later identified as Orlando Rodriguez,[2] pointed a gun at Douglas and demanded that Douglas turn over his jewelry. (T at 25-30, 122-28, 184-86). The second man, later identified as petitioner, stood behind Grimes and told him not to move. (T at 31, 189-90, 221-22). Grimes and Douglas removed their jewelry, and placed the jewelry and their money on the ground. Rodriguez fired his gun which struck the ground near Douglas's foot, and ordered the three men to lay face down on the ground. (T at 32-33, 129-31, 133-34).

McCoy ran across the street. Rodriguez chased and fired his gun at McCoy. (T at 134-35, 193-94). Rodriguez dragged McCoy back across the street to where petitioner was standing over Grimes and Douglas. (T at 41-42, 135-36, 163-65). Petitioner and Rodriguez proceeded to hit, punch and kick McCoy. Rodriguez then shot McCoy in the buttock.

At that time, off duty police officers, Detective Stephon Garland and Police Officer Ian Adamson ("Adamson"), were in the vicinity, heard a gunshot and observed a hispanic man pointing a gun at the ground. (T at 243-47, 303-07). The officers heard another gunshot, noticed petitioner standing a few feet away from the hispanic man, and observed that both men were standing over two men who were laying face down on the ground. (T at 247-50, 306-07). The officers identified themselves as police officers and told petitioner and Rodriguez to freeze. Petitioner and Rodriguez picked up the money and jewelry from the ground and fled. (T at 138-39, 199-200). Rodriguez fired his gun at the officers, and Adamson fired one shot in return. (T at 310-11). The officers pursued petitioner and Rodriguez to the Brooklyn Terminal Market warehouse ("Terminal Market"). Sergeant James Fulton and Police Officer Gerald Barnett, who were on patrol, responded to a 911

---

[2] Orlando Rodriguez was tried separately.

call from the off duty officers, and following a chase, intercepted petitioner. (T at 313-14, 356-57, 360-62, 369 431, 440-41). The officers recovered the victims' jewelry and money from petitioner. (T at 369-71).

Douglas, Grimes and McCoy went to Brookdale Hospital in order for McCoy to be treated for his gunshot wound. Douglas and Grimes proceeded to the police precinct where Douglas inadvertently observed petitioner in a holding cell. (T at 144). Later that night, upon his release from the hospital, McCoy was brought to the police precinct. Douglas, Grimes and McCoy were then shown the jewelry that was recovered from petitioner, which they identified. They later identified petitioner in separate lineups. (T at 52-53, 145-46, 161-62, 204-07, 226, 374-78). On January 7, 1999, police officers apprehended Rodriguez, and Grimes, Douglas and McCoy each identified Rodriguez in a lineup.

A. The Defense Case

Petitioner testified in his own defense, and asserted that he was not one of the robbers but merely a bystander. Specifically, petitioner testified that on December 27, 1998, he took his wife to dinner for her birthday, and then went to Club 88. He stayed in the club for approximately one and one-half hours, and then went outside to get some air, where he noticed two men standing over three men who were lying on the ground. (T at 545-46, 548). Petitioner testified that he watched the men for approximately ten to fifteen minutes. (T at 549). Petitioner further testified that one of the off duty officers who testified at the trial, came out of the club observed what was occurring and yelled "freeze." (T at 551). The two robbers fled the scene as did the three victims. Petitioner claims that "he did something really silly" and picked up a silver watch from the ground, and ran away. (T at 552-55). Petitioner denied being at the terminal market that night, denied that his hands were

3

bleeding when he was arrested,[3] and although he identified the jacket that was introduced at trial as his own, he denied that the torn jeans that were introduced at trial were his. (T at 555-58, 571-72, 597-98, 628). Petitioner testified that the victims were mistaken in identifying him, and that officers Fulton and Barnett were framing him. (T at 572-74). In addition, petitioner testified that other people on the street that night told the police that they were arresting the wrong person, that the man they wanted had ran around the corner. (T at 569).

II. Pre-trial Hearings

A. Wade Hearing

On July 19, 1999, a Wade hearing [4] was held before the Honorable Justice Lawrence Knipel ("Justice Knipel") of the Supreme Court of the State of New York, Kings County. Petitioner's attorney moved to suppress the identifications arguing that the lineup was unduly suggestive because there was a possibility that the witnesses had seen petitioner before viewing the lineup. (See Wade Hearing dated July 19, 1999, ("H") at 127-28). The Court found that the lineup was proper. (H at 136).

B. Independent Source Hearing

Following the Wade hearing, the prosecutor learned that Douglas had viewed petitioner in a holding cell prior to the lineup. On August 12, 1999, an independent source hearing was held before Justice Knipel, in order to determine whether Douglas's lineup identification of petitioner should be suppressed. The prosecutor argued that there was no deliberate misconduct on the part

---

[3] A medical form was introduced at trial which states that "defendant received minor laceration to hand left while trying to evade police." (T at 598). Although petitioner signed this form, he alleges that the form was filled out after he signed it. (T at 598-99).

[4] A Wade hearing is held to determine whether the pretrial identification was unduly suggestive. United States v. Wade, 388 U.S. 218 (1967). In addition to the Wade hearing, the court held Mapp Dunaway and Huntley hearings. The instant habeas petition challenges only the Wade hearing decision.

of the police in having led Douglas past the cell where petitioner was being held. (See Independent Source Hearing dated August 12, 1999, ("ISH") at 33, 35). Defense counsel argued that the police officers deliberately led Douglas past the holding cell, and as a result of those actions, the lineup was impermissibly suggestive. (ISH at 38-39). Defense counsel asked the court to suppress Douglas's identification of petitioner and to preclude Douglas from identifying petitioner at trial. (ISH at 39). The court suppressed Douglas's lineup identification of petitioner. However, the court ruled that Douglas could make an in court identification of petitioner as there was an independent basis for Douglas to testify or identify petitioner in court as the perpetrator. (ISH at 40).

III. Procedural History

The trial court submitted the following counts to the jury: four counts of robbery in the first degree; three counts of robbery in the second degree; and three counts of criminal possession of stolen property in the fifth degree. Petitioner was convicted of three counts of robbery in the first degree. See People v. Dow, 288 A.D.2d 486, 735 N.Y.S.2d 392 (2d Dept. 2001). On November 1, 1999, petitioner was sentenced to concurrent prison terms of ten years on each of the robbery counts. (S at 10).[5]

Petitioner appealed his conviction to the Appellate Division, Second Department and argued that (1) the People had improperly bolstered the eyewitness identifications of petitioner at trial by introducing evidence of the eyewitness identification of petitioner's accomplice, who was tried separately, and (2) the spirit of the suppression ruling was violated when the People introduced evidence of Evin Douglas's pre-lineup viewing of petitioner. (Brief for defendant-appellant at 2). On June 11, 2001, petitioner filed a *pro se* supplemental brief and argued that (1) that there was no

---

[5] "S"__ refers to the pages of the sentencing transcript.

probable cause to arrest him, and (2) that the prosecutor's closing argument deprived him of a fair trial. (Supplemental Brief for defendant-appellant at 2). By opinion dated November 26, 2001, the Appellate Division affirmed petitioner's conviction. The Appellate Division held that "[t]he defendant's contention that the People improperly bolstered identification testimony by introducing evidence that the eyewitnesses had also identified the defendant's accomplice, who was not on trial, is unpreserved for appellate review. In any event, any error in admitting this evidence was harmless in light of the overwhelming evidence of the defendant's guilt (see, People v. Crimmins, 36 NY2d 230, 241-242)." The Appellate Division further held that the defendant's remaining contentions, including those raised in his supplemental *pro se* brief, are without merit. See People v. Dow, 288 A.D.2d 486, 735 N.Y.S.2d 392 (2d Dept. 2001). The New York Court of Appeals denied petitioner leave to appeal on January 24, 2002. See People v. Dow, 97 N.Y.2d 703 (2002).

The instant habeas petition, raises the same grounds that petitioner raised in his main brief to the state courts. Petitioner alleges that (1) that the People improperly bolstered the eyewitness identifications of petitioner, and (2) the spirit of the suppression ruling was violated when the People introduced evidence of Evin Douglas's pre-lineup viewing of petitioner.

## DISCUSSION

Petitioner asserts that he was deprived of his due process right to a fair trial because of two evidentiary errors. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Generally, state court rulings on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation. James v. Goord, No. 02 Civ. 1174, 2004 WL 1207906, at * 8 (S.D.N.Y. Jun. 01, 2004).

To prevail on a claim that an evidentiary error amounted to a constitutional deprivation, the petitioner must show that the error was so pervasive that he was denied a fundamentally fair trial.

United States v. Agurs, 427 U.S. 97, 108 (1976); Taylor v. Curry, 708 F.2d 886, 891 (2d Cir.), cert. denied, 464 U.S. 1000 (1983). The standard is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been 'crucial, critical, highly significant.'" Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (quoting Nettles v. Wainwright, 677 F.2d 410, 414-15 (5th Cir.1982)); accord Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998); Richardson v. Artuz, No. 97 CV 2128, 2004 WL 556688, at *16 (E.D.N.Y. Mar. 22, 2004). Here, petitioner was not denied a fair trial.

I. Adequate and Independent State Ground

First petitioner alleges that the state court improperly admitted testimony that had the effect of "bolstering" the People's case. Specifically, petitioner asserts that he was denied his right to a fair trial when the prosecutor elicited that the three victims correctly identified Rodriguez, the second robber, in a pretrial lineup, thereby bolstering the reliability of their identification of petitioner who was tried alone. Federal courts may not review state court decisions that rely on adequate and independent state grounds. Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); Harris v. Reed, 489 U.S. 255 (1989); Jones v. Stinson, 229 F.3d 112, 117 (2d Cir. 2000). In order for federal habeas review to be barred, "[t]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." Harris, 489 U.S. at 261-62 (internal quotation marks and citation omitted). Because it can be "difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference," Coleman, 501 U.S. at 732, such reliance on state law must be "clear from the face of the opinion." Id. at 735 (internal quotation marks omitted). If a state court holding contains a plain statement that a claim is procedurally barred, then the federal habeas court may not review the claim, even if the state court also rejected the claim

on the merits in the alternative. See Harris, 489 U.S. at 264 n.10 ( "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

Bolstering claims typically arise under New York law when one witness confirms an identification previously made by another witness. See Snow v. Reid, 619 F.Supp. 579, 582 (S.D.N.Y. 1985) ("The concept of 'bolstering' . . . [is] derived from People v. Trowbridge, 305 N.Y. 471, 113 N.E.2d 841 (1953), which holds that it is error to permit an identification made by one witness to be corroborated by the testimony of another witness who merely testifies that the identification did occur."). An allegation of improper bolstering does not establish a constitutional claim that is cognizable on federal habeas corpus review. Diaz v. Greiner, 110 F.Supp.2d 225, 234 (S.D.N.Y. 2000) (collecting cases in which courts have declined to grant habeas relief on the ground of "bolstering"). Even if this state law proscription could be stretched to apply to the testimony here, it is clear that the alleged "bolstering" would not warrant the issuance of an extraordinary writ since there is no reasonable likelihood that the identification at issue affected the outcome of petitioner's trial. Mendoza v. McGinnis, No. 03 Civ. 2598, 2004 WL 736894, at *7-8 (S.D.N.Y. Apr. 5, 2004); Carr v. Fischer, 283 F.Supp.2d 816, 837 (E.D.N.Y. 2003); Cummings v. Artuz, 237 F.Supp.2d 475, 487 (S.D.N.Y. 2002).

Here, the Appellate Division refused to consider petitioner's "bolstering" claim. The state court's decision rested on an adequate and independent state procedural bar which was clearly and expressly stated. Specifically the Appellate Division held that "[t]he defendant's contention that the People improperly bolstered identification testimony by introducing evidence that the eyewitnesses had also identified the defendant's accomplice, who was not on trial, is unpreserved for appellate review. In any event, any error in admitting this evidence was harmless in light of the overwhelming evidence of the defendant's guilt (see, People v. Crimmins, 36 NY2d 230, 241-242)." The Appellate

8

Division further held that the defendant's remaining contentions, including those raised in his supplemental *pro se* brief, were without merit. See People v. Dow, 288 A.D.2d 486, 735 N.Y.S.2d 392 (2d Dept. 2001).

New York's codified contemporaneous objection rule, applied here by the Appellate Division provides that, "an issue is properly preserved for appeal as a matter of law only if the appellant objected on that ground in the trial below," Glenn v. Bartlett, 98 F.3d 721, 724 n.2 (2d Cir. 1996), at a time when the trial court could have corrected the alleged impropriety. See N.Y. Crim. Proc. Law 470.05[2] (McKinney 1994) ("CPL").[6] The failure to object at trial when required by New York's contemporaneous objection rule, CPL § 470.05, is an adequate and independent state ground. See e.g., Murray v. Carrier, 477 U.S. 478, 485-92 (1986) (contemporaneous objection rule is an adequate and independent state ground); Wainwright v. Sykes, 433 U.S. 72, 86, 90 (1977) (same); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) ("we have observed and deferred to New York's consistent application of its contemporaneous objection rules") (citing Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (respecting state court's application of C.P.L. § 470.05(2) as adequate bar to federal habeas review); Fernandez v. Leonardo, 931 F.2d 214, 216 (2d Cir. 1991) (noting that failure to object at trial constitutes adequate procedural default under C.P.L. § 470.05(2)); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (violation of New York's contemporaneous objection rule is an adequate and independent state ground). Here, petitioner did not object to the allegedly

---

[6] Section 470.05(2) of New York's Criminal Procedure Law provides, in relevant part:

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal.

improper testimony, did not ask for a curative instruction or move for a mistrial. Accordingly, petitioner's claim is procedurally barred from review by this Court.

Since the decision petitioner seeks to challenge relied on an independent and adequate ground, this Court cannot consider petitioner's claim unless he shows cause for the default and prejudice resulting therefrom. Coleman 501 U.S. at 750. Petitioner fails to demonstrate either cause or prejudice, and failure to consider the claim will not result in a fundamental miscarriage of justice. Therefore, this Court may not review the merits of petitioner's bolstering claim. Edwards v. Carpenter, 529 U.S. 446 (2000).

II. Merits

A. Standard of Review

Even if this claim were not procedurally barred, it would be denied as without merit. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, once a state court has adjudicated a petitioner's claim on the merits, a federal court may not grant a habeas petition on that claim unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d)(1); See Mask v. McGinnis, 252 F.3d 85, 90 (2d Cir. 2001) (holding that the phrase "Federal Law" refers only to "clearly established Supreme Court precedent").

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court held that a decision is "contrary to" Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," id. at 405; or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and nevertheless arrives at a different result from [Supreme Court] precedent." Id. at 406. Under the

"unreasonable application" clause, a federal court may grant the writ if the state court identifies the correct legal principle but unreasonably apples that principle to the facts of the prisoner's case. Id. at 407-08. Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The Court of Appeals has warned, however, that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889 (3rd Cir. 1999)).

Further, as long as the state court disposes of the federal claim on the merits and reduces its disposition to judgment, the deference demanded of a federal habeas court by § 2254(d)(1) applies "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001); see Ryan v. Miller, 303 F.3d 231, 245-46 (2d Cir. 2002).

B. Suppression Ruling

Petitioner alleges that the spirit of the trial court's suppression ruling was violated when the prosecutor improperly elicited Douglas's testimony that he viewed petitioner in a holding cell prior to the lineup.[7] (Brief for defendant-appellant at 22). Petitioner argues that "the prosecutor's

---

[7] At issue is the following testimony:

injection into the case of the showup identification by Douglas merely took the place of his suppressed lineup identification, effectively circumventing the suppression ruling."(Brief for defendant-appellant at 22). Petitioner further argues that this error directly contradicted his mistaken identity defense, and further bolstered the identification of petitioner. The state court determined that petitioner's claim had no merit. See People v. Dow, 288 A.D.2d at 486.

Here, the trial court found that while the police may have been negligent in leading Douglas past the holding cell where petitioner was located, there was no evidence that the police officers did so to influence the outcome of the lineup. The court stated:

> There is no doubt that the witnesses had a good opportunity to observe the defendant at the time of the crime. And with regard to the advertent or inadvertent police conduct, obviously the police conduct in leading the witness past the holding cell was intentional. Was intentional conduct... Although I do observe that they, outside of leading the witness past the holding cell, they made no extra effort to point the defendant out. And just led him by.

(ISH at 39). The trial court suppressed Douglas's lineup identification of petitioner, but held that an

---

Prosecutor: When you went into the—when you went into the station house, do you remember what happened? Did you go in the front door, back door what happens?

Douglas: We came in through the back.

Prosecutor: Okay, and what happened when you went in the back door?

Douglas: As I was going through the back, I noticed Vincent Dow in the cage...

Prosecutor: Tell us what you actually saw?

Douglas: I just seen him sitting in the cage.

Prosecutor: Did the officer say anything to you at that time?

Douglas: No.

(T at 143-44).

12

in court identification of petitioner was permissible, as there was "an independent, more than ample basis for that witness to testify or identify the defendant in court as the perpetrator." (ISH at 40).

Even if pretrial procedures have been unduly suggestive, a court may admit in-court identification testimony if the court determines it to be independently reliable. Manson v. Brathwaite, 432 U.S. 98, 114 (1977); see also Raheem v. Kelly, 257 F.3d 122, 135 (2d Cir. 2001) ("a suggestive procedure 'does not in itself intrude upon a constitutionally protected interest' if it did not contribute significantly to the identification of the defendant," citing Manson, 432 U.S. at 113 n.13); Robinson v. Mazzuca, No. 01 Civ. 0001, 2002 WL 31246535, at *5 (S.D.N.Y. Oct. 07, 2002). Where a pre-trial identification has, as here, been found unduly suggestive, due process requires that the court determine whether the proffered identification evidence has independent reliability. Raheem, 257 F.3d at 135 (2d Cir. 2001). In determining whether there was a likelihood of misidentification, courts look to the following factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. at 188, 199-200 (1972); Kennaugh v. Miller, 289 F.3d 36 (2d Cir. 2002); Mendoza v. McGinnis, 2004 WL 736894, at *7.

Here, overwhelming evidence of petitioner's guilt was presented at trial, including (a) the testimony of the three victims who had adequate opportunity to view petitioner on the night they were robbed, (b) the testimony of the arresting officers, and (c) petitioner's testimony. In addition, on cross examination, the defense attorney was "able effectively to challenge the credibility and reliability" of the witnesses' in court identifications. See Kennaugh, 289 F.3d at 48. Importantly, the jury was also given a cautionary instruction. The trial judge instructed the jurors that to find

petitioner guilty of robbery they must find beyond a reasonable doubt that petitioner was one of the robbers. (T at 729-30). Furthermore, the court instructed the jury that in order to identify the petitioner as one of the robbers, the jury must consider the following: (a) the length of time of the crime, (b) the lighting at the crime scene, (c) the distance between the witness and the petitioner, (d) whether the witness had a clear view of petitioner, (e) the length of time, the witnesses were able to view petitioner prior to their subsequent identifications of petitioner. (T at 733-36). Here, Douglas's in-court testimony and identification of petitioner had a basis that was clearly independent of the showup. Therefore, the state court's determination herein was not contrary to, nor an unreasonable application of Federal law as determined by the Supreme Court.

Moreover, federal law dictates that trial errors are subject to harmless error analysis on habeas review. Therefore, even if the Court were to determine that the in-court identification was unreliable, or that there was any merit to petitioner's bolstering allegation, any error was harmless in light of other trial evidence connecting petitioner to the crime. In making a harmfless error determination, the court looks to the record as a whole, considering *inter alia* the overall strength of the prosecution's case. Brown v. Keane, 355 F.3d 82, 91 (2d Cir. 2004).

The Second Circuit has not resolved the issue of whether after the AEDPA, a habeas court reviewing a state court judgment should continue to apply the Brecht v. Abrahamson, 507 U.S. 619 (1993), harmless error standard or instead should determine whether the state court's decision was contrary to, or involved an unreasonable application of the standard set forth in Chapman v. California, 386 U.S. 18 (1967). See Gutierrez v. McGinnis, 389 F.3d 300, 306 (2d Cir. 2004) ("We do not presently reach the issue of whether or how to apply Brecht where the state court has not engaged in harmless error review, as, of course, those facts are not before us.") (footnote omitted); see also Benn v. Greiner, 402 F.3d 100, 105 (2d Cir. 2005) (post-Gutierrez case declining to decide

the harmless error standard to be applied "in the absence of a state court adjudication of harmlessness"). Therefore, it still remains an "open question" in this Circuit which harmless error standard is to be applied under these circumstances. Benn, 402 F.3d at 105 (citing Rosa v. McCray, 396 F.3d 210, 226 (2d Cir. 2005) (Straub, J., concurring in part and dissenting in part)); Mejias v. Allard, No. 03 CV 5195, 2006 WL 119033, at *14 (E.D.N.Y. Jan. 13, 2006). However here, under either standard, any evidentiary error, if made, was harmless.

## CONCLUSION

Accordingly, petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 is denied as the state court decision challenged herein was not contrary to or an unreasonable application of clearly established Federal law. No certificate of appealability shall issue as petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253 (c)(2); Lucidore v. New York State Div. of Parole, 209 F.3d 107 (2d Cir. 2000); Lozada v. United States, 107 F.3d 1011 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). The Court certifies pursuant to 28 U.S.C. § 1915 (a)(3) that any appeal from the judgment denying this petition would not be taken in good faith. See Coppedge v.United States, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to enter judgment denying the instant petition and dismissing this case.

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: Brooklyn, New York
February 24, 2006